*Objections to the proposed location of a railroad — proceedings under section 6 of the
Railroad Law — powers of the commissioners — original location diminished in
width — scope of review by the General Term.*

Commissioners appointed under the provisions of section 6 of chapter 565 of the
Laws of 1890 (the Railroad Law, chapter XXXIX of the General Laws), as
amended by chapter 676 of the Laws of 1892, to examine the proposed route of
a railroad, on the petition of an occupant or owner of land aggrieved by the
proposed location, are confined to the single alternative, in each case, of
approving the route proposed by the railroad corporation or adopting that
proposed by the petitioner; they cannot select a third route for the road over
the lands of other persons.

The commissioners appointed on the petition of an aggrieved landowner, a
hydraulic power and manufacturing company operating on Niagara river, to
examine the proposed route of a railroad along the edge of Niagara river,
rejected the new route proposed by the petitioner, on condition that the rail-
road company should narrow its proposed location by contracting the line on
the river side upon the lands of the petitioner, and should agree to maintain
its track at a certain elevation, and maintain openings thereunder to the river;
the railroad company thereupon, by a resolution of its directors, assented to
these conditions and reduced the width of its route accordingly, and the com-
missioners then affirmed the route so reduced.

*Held,* that as the route so affirmed and adopted was within and a part of the
width of the route as originally located over the lands of the petitioner, the
action of the commissioners in affirming that portion of the route located by
the railroad company was not in conflict with the rule above stated.

On appeal from the determination of the commissioners in a proceeding under
said section 6 of the Railroad Law, the General Term is confined to the con-
sideration and determination of questions of law, and will not consider the
case on the merits and substitute its judgment in the place of that of the com-
missioners as to the merits of the two routes.

The question of the character of the railroad corporation whose proposed route
is the subject of examination, and as to whether it was organized for a public
purpose, is not brought before the General Term for determination, by an
appeal from the decision of commissioners appointed under section 6 of the
Railroad Law.

APPEAL by the petitioner, the Niagara Falls Hydraulic Power
and Manufacturing Company, from the decision of the commis-

sioners appointed to examine the route of the proposed railroad company, and the route to which the petitioner proposed to change the same pursuant to the Laws of 1890, chapter 565, section 6 (the Railroad Law, chapter XXXIX of the General Laws), as amended by the Laws of 1892, chapter 676.

The decision appealed from was filed in the office of the clerk of Niagara county on the 24th day of December, 1892.

*John L. Romer*, for the appellant.

*Herbert P. Bissell*, for the respondent.

HAIGHT, J.:

The Niagara Falls and Lewiston Railroad Company was organized for the purpose of constructing, maintaining and operating a railroad for public use, for the transportation of persons and property. By its articles of incorporation it commences at a point near the easterly shore or margin of the Niagara river, at or near the village of Lewiston and running thence southerly by the most direct and feasible route along the easterly shore or margin of the Niagara river to the village of Niagara Falls terminates in such village. From the map of the route filed by the company in the office of the clerk of Niagara county, it appears that the line of the road, as located by the company, extends along the easterly shore or margin of the Niagara river, near the water's edge, from the village of Lewiston to the lands of the New York State reservation, in the village, now city, of Niagara Falls; that the center line thereof is distant two rods from the easterly shore or margin of the river, and its easterly line is two rods easterly from such center line; that at a point near the crossing of the cantilever bridge over the river, a loop or line of the road is extended up over the high bank and around to a point known as the Whirlpool.

It appears from the report of the commissioners that the petitioner, the Niagara Falls Hydraulic Power and Manufacturing Company, is the owner of a tract of land in the city of Niagara Falls, bounded by the easterly water line or margin of the river, and extending on to the high bank; that the change of route proposed is from a point where the respondent's route, as located on its map, reaches the top of the high bank near the cantilever bridge, in Spring street;

thence through various streets, specifically named, to the junction of Third street with Ontario street.

The commissioners have found as facts that the space between the perpendicular or high bank and the water line of the river is capable of being used by manufacturing establishments, and that they can procure power by making a second use of the water after its use by the mills and manufacturing establishments of the petitioner, located upon the high bank ; that it is of great value, amounting to a half million of dollars or upwards.    They have also found as facts that the proposed change of the respondent's route necessitates the crossing of the railroad tracks of the New York Central Railroad Company at grade ; that such tracks are in frequent use, both day and night, and that such crossing would become extremely dangerous.

The commissioners, in their report, further state that after the evidence had been taken and the case submitted to them, they called the counsel for the respective parties before them and informed them that they were convinced that the railroad could be constructed and operated on a space of twenty feet in width along the lands of the petitioner, and that its line on the east should be located at a distance of twenty feet from the water line or easterly margin of the river, and if the railroad company would so reduce and contract its easterly line, by a resolution of the board of directors, and would create and supply sufficient openings for the discharge of the water by the manufactories of the petitioner into Niagara river, and for transferring, carrying and removing the stone through the openings to the water of the river, and erect and maintain its railroad tracks on such space of twenty feet from the water line or margin of the river at the height of thirty feet, the application for the change in the line or route of the railroad would be denied, but otherwise would be ordered and directed ; that afterwards a resolution of the company was adopted by the directors, assenting to the conditions imposed by the commissioners and reducing the line of its route to that indicated, and thereupon the commissioners, by their report, affirmed the route as so changed by the resolution of the board of directors of the company.

The petitioner contends that the commissioners had no power to

compel or receive from the railroad company a resolution contract-,ing or changing its route as originally proposed, and that it had no power to impose as a condition that the tracks of the company should be elevated at a height of thirty feet from the surface of the water, for the purpose of creating openings for the discharge of water, etc., underneath such tracks; that the commissioners were vested with no discretion other than to affirm the route as located by the railroad company or to adopt that proposed by the petitioner. In support of such contention, the appellant relies upon the opinion of this court as delivered by Dwight, J., in the case of *The Application of the Lake Shore & Michigan Southern R. R. Co. to Change the Route of the New York, Lackawanna & Western R. R. Co.* In that case it was said: "Upon these appeals, we are restricted to a review of the decision of the commissioners affirming the route as located by the railroad company and are confined, as the commissioners themselves were, to the single alternative in each case, of affirming the route proposed by the respondent or adopting that proposed by the petitioners." This we understand to be in accordance with the provisions of the statute which requires the commissioners, after an examination of the routes proposed, and after hearing the parties, "to affirm the route originally designated or adopt the proposed alteration thereof, as may be consistent with the just rights of all parties and the public, including the owners or occupants of lands upon the proposed alteration." The reason for this is apparent The railroad company, in locating its route, is required to make a map and profile as adopted by it in the county and file the same in the office of the clerk of the county. The corporation is then required to give written notice to all occupants of lands over which the route is designated. Such owners or occupants of land, feeling aggrieved, may, within fifteen days thereafter, give notice to the corporation that an application will be made to the Supreme Court for the appointment of commissioners to examine the proposed route and such alteration thereof as such owner or occupant shall propose. Such application must be accompanied with a map and profile of the route designated by the corporation and of the proposed alteration thereof, and notice must be given to the owners or occupants of lands to be affected by such proposed alteration. Thus all of the parties to be affected by the two pro-

posed routes are given an opportunity to be heard. If the commissioners should adopt neither of the proposed routes, but select a third, it might involve the locating of the road over the lands of persons who had no notice of the proceedings or an opportunity to oppose the same. But we do not understand that the commissioners have violated this provision of the statute. They have not selected a third route extending over lands of other persons, but have confined themselves to an adoption of that which was within the lines of the route as originally located by the railroad company. True, the route, as originally located, was four rods in width, and that as affirmed by the commissioners is but twenty feet in width over the lands of the petitioner, but the twenty feet in width as affirmed by the commissioners is within and a part of the four rods in width of the route as originally located. We, therefore, do not regard the action of the commissioners in affirming that portion of the route located by the railroad company as in conflict with the statute or the decisions of this court.

We are asked to consider the case upon the merits, to reverse the determination of the commissioners and to adopt the route proposed by the petitioner. The statute provides that this court may, upon the hearing of the appeal, affirm the route proposed by the corporation or may adopt that proposed by the petitioner. (Laws of 1890, chap. 565, § 6, as amended by the Laws of 1892, chap. 676.) The language of this statute is identical with that used in the Laws of 1850, chapter 140, section 28, as amended. In *The Matter of the Application of the Lake Shore & Michigan Southern R. R. Co. to Change the Route of the New York, Lackawanna & Western R. R. Co.* (89 N. Y. 442), it was held that on an appeal brought to review the decision of the commissioners, only questions of law could be considered and determined. And to the same effect is the case of *The Application of the New York, Lake Erie & Western R. R. Co. to Change the Route of the New York, Lackawanna & Western R. R. Co.* (99 N. Y. 388). The statute requires the court to appoint a practical civil engineer as one of the commissioners. The commissioners are required to personally examine the proposed route. They consequently have the aid of scientific advice, as well as that of personal inspection, upon which to form their conclusion as to the merits of the two routes. This court upon review, must

of necessity be confined to the evidence taken in the proceeding. If the commissioners have committed errors, or if their conclusions of law are in conflict with the facts found by them, this court may correct their determination, but it cannot or ought not to substitute its judgment in the place of that of the commissioners as to the merits of the two routes.

It is contended that the corporation was not organized for a public purpose; that it is but a revival of the Niagara Falls and Whirlpool railway, which was condemned by the Court of Appeals in 108 N. Y. 375. But we do not regard this question as now before us for determination. The commissioners were not empowered to determine the character of the corporation, and we are here reviewing only their determination.

Determination appealed from affirmed, with the costs of this appeal to respondent.

All concurred.

Determination of commissioners appealed from affirmed, with costs of this appeal to the respondent.